UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAUL ARTURO FERNANDEZ,<br><br>**Defendant.** | Criminal Action No. 10-18-4 (JDB) |

## MEMORANDUM OPINION

Before the Court is [404] Fernandez's motion to set aside his sentence under 28 U.S.C. § 2255. Fernandez pleaded guilty to, and was sentenced on, one count of conspiracy to distribute cocaine knowing and intending that it would be unlawfully imported into the United States. See Judgment [ECF No. 299]. Fernandez had pleaded pursuant to an agreement that contained, among other provisions, a waiver of his right to appeal most aspects of his plea and sentence. See Plea Agreement [ECF No. 247] ¶ 19. In March 2016, Fernandez filed this motion, arguing that the attorneys who represented him at his first plea hearing, at his second plea hearing and sentencing, and on his direct appeal were each ineffective in allowing him to agree to the appeal waiver, and that he did not understand what the court-appointed translator said to him during his plea hearing, rendering the waiver involuntary. See Mot. Under 28 U.S.C. § 2255 ("Def.'s Mot.") [ECF No. 404] at 5–9. For the reasons explained below, the Court will deny Fernandez's motion.

### I. BACKGROUND

The government indicted Fernandez in January 2010 on three charges: two counts of conspiracy to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, and one count of conspiracy to distribute five kilograms or more of cocaine knowing and intending that the cocaine would be unlawfully imported into the United

1

States. See Superseding Indictment [ECF No. 4] at 2–3, 7. On November 10, 2011, Fernandez signed an initial plea agreement, in which he agreed to plead guilty to the conspiracy-to-import count in exchange for the government's agreeing to dismiss the other two counts; agreed to the statement of facts that underlay the conspiracy-to-import count; and waived his appeal rights. See First Plea Agreement [ECF No. 107] ¶¶ 1–3, 19. The same day, Fernandez pleaded guilty, and the Court accepted the plea. See Min. Entry of Nov. 10, 2011. Robert E. Abreu represented Fernandez during the plea bargaining process and at the November 2011 plea hearing. See Tr. of Nov. 10, 2011 Plea Hearing [ECF No. 408-4] at 2:9–:10, 17:6–:11.

However, Fernandez later sent a letter to the Court requesting new counsel, and Abreu moved to withdraw as counsel in February 2012. See Mot. to Withdraw [ECF No. 131]. The Court granted Abreu's motion, see Min. Entry of Mar. 13, 2012, and Brian W. Stolarz was then appointed counsel for Fernandez under the Criminal Justice Act, see Notice of Appearance [ECF No. 211]. On August 13, 2012, Fernandez (through Stolarz) agreed to accept his prior plea again, with a few changes not relevant here. See Plea Agreement at 11; Tr. of Aug. 13, 2012 Plea Hr'g [ECF No. 408-11] at 2:7–:9, 16:2–:5. The government asked the Court to conduct a new plea colloquy with Fernandez under Federal Rule of Criminal Procedure 11, "to cure any possible Sixth Amendment taint or any other issues that have come up in the past." See Tr. of Aug. 13, 2012 Plea Hr'g at 2:9–:12. The Court agreed to conduct a new colloquy.

At the outset of the colloquy, the Court asked Fernandez whether he could "understand these proceedings through the use of the interpreter," to which Fernandez replied: "Yes, I am understanding it." Id. at 17:25–18:2. The Court informed Fernandez: "If you don't understand anything about these proceedings or any question that I ask, just let me know and I'll try to explain. If at any time you wish to consult with Mr. Stolarz, let me know that, and you'll be able to talk to

him privately." Id. at 17:5–:8. The Court then conducted the colloquy, during which the Court asked Fernandez whether he understood that, "by pleading guilty, [he] would be generally giving up [his] rights to appeal." Id. at 25:9–:11. Fernandez responded: "I would be waiving my right to appeal. Yes, of course." Id. at 25:12–:13. The Court also asked whether Fernandez had had a sufficient opportunity to discuss the charge with Stolarz, to which Fernandez gave an affirmative response, see id. at 27:9–:13; the Court then described the charge against Fernandez, and Fernandez stated that he understood the charge, see id. at 27:14–:22. The Court fully explained the appeal waiver and, after Fernandez again told the Court that he understood that he was waiving his right to appeal, the Court found that the waiver had been discussed with counsel and that Fernandez had knowingly and voluntarily waived his right to appeal. See id. at 39:14–40:22. After the colloquy, Fernandez pleaded guilty and the Court accepted the plea. See id. at 44:2–45:13.

Stolarz continued to represent Fernandez at his sentencing. See Tr. of Sentencing [ECF No. 323] at 1. There, Fernandez said that he "ha[d] not participated in any criminal groups, let alone any drug trafficking," id. at 27:25–28:2, but acknowledged his "participation" in criminal activity and that he knew he had "made a mistake," id. at 27:8, 27:24. After arguments from each side, during which Stolarz argued for a sentence significantly below the Guidelines range, the Court sentenced Fernandez to 144 months' imprisonment, within but on the low end of his Guidelines range. See id. at 30:11–13, 32:24–33:4. Fernandez appealed his sentence, represented this time by Joseph R. Conte. See United States v. Fernandez, Crim. No. 12-3096 (D.C. Cir. filed Nov. 29, 2012). Fernandez argued that his sentence was unreasonable; however, as he did not challenge his appeal waiver, the D.C. Circuit dismissed the appeal on December 1, 2015. See United States v. Fernandez, 624 F. App'x 3, 3–4 (D.C. Cir. 2015).

Three months later, Fernandez filed the instant motion. See Def.'s Mot. at 1. Fernandez asserts, first, that Abreu was ineffective because Abreu coerced him to plead guilty to a crime Abreu knew he had not committed and then told him to sign away his right to appeal. See id. at 5. Fernandez then claims that Stolarz was ineffective because Stolarz advised him to waive his right to appeal, knowing "it is wrong" so to advise, and took him to sentencing despite knowing that Abreu had advised him inaccurately during his first plea hearing. Id. at 6. Next, Fernandez asserts that the Court erred in finding that he had knowingly, intelligently, and voluntarily waived his right to appeal, since he had not understood the court-appointed translator and therefore did not realize he had waived his right to appeal, "because I did not committed [sic] any crime in America." Id. at 7–8. Finally, Fernandez claims that Conte was ineffective for not having challenged the waiver on direct appeal despite knowing that Fernandez had not understood to what he was agreeing. See id. at 9. The government filed a motion opposing all of Fernandez's claims, see Gov't Opp'n to Def.'s Mot. ("Opp'n") [ECF No. 408], and Fernandez filed a reply, see Reply [ECF No. 416]. The Court will decide this motion based on the briefs and the record in this case.[1]

## II. LEGAL STANDARD

A federal prisoner may bring a habeas corpus action in district court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[1] Fernandez has asked for an evidentiary hearing on his motion to vacate. See Def.'s Mot. at 13; Reply at 5–7. However, no hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see United States v. Baxter, 761 F.3d 17, 24 n.5 (D.C. Cir. 2014) ("A 'district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced.'" (quoting United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996))); Morrison, 98 F.3d at 626 (stating that "a summary denial of a § 2255 motion is appropriate . . . when the claim does not necessitate the consideration of any information not within the record or within the memory of the judge ruling on the motion"). In his petition and reply, Fernandez "does not point to any information outside the record that would have substantially assisted the [Court] in its disposition and thus perhaps necessitated a hearing." United States v. Toms, 396 F.3d 427, 437 (D.C. Cir. 2005). And the Court determines, for the reasons explained in this opinion, that the records of the case are sufficient conclusively to show that Fernandez is not entitled to relief.

4

maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). While "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," defendants may bring ineffective assistance of counsel ("IAC") claims for the first time on collateral review without having to meet these standards. Massaro v. United States, 538 U.S. 500, 504, 509 (2003). Instead, IAC claimants "must show [1] 'that counsel's performance was deficient' such that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and [2] that 'the deficient performance prejudiced the defense.'" United States v. Glover, 872 F.3d 625, 630 (D.C. Cir. 2017) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). A court may deny an IAC claim on either of these two prongs without addressing the other. See Strickland, 466 U.S. at 697.

Defendants may also agree to waive their right to appeal their pleas or sentences. See United States v. Guillen, 561 F.3d 527, 529 (D.C. Cir. 2009). "[A] 'waiver of the right to appeal a sentence is presumptively valid and is enforceable if the defendant's decision to waive is knowing, intelligent, and voluntary.'" United States v. Lee, 888 F.3d 503, 506 (D.C. Cir. 2018) (quoting In re Sealed Case, 702 F.3d 59, 63 (D.C. Cir. 2012)). Even "[a]n anticipatory waiver—that is, one made before the defendant knows what the sentence will be"—is enforceable "if the defendant is aware of and understands the risks involved in his decision." Guillen, 561 F.3d at 529; accord Lee, 888 F.3d at 506; United States v. Powers, 885 F.3d 728, 731 (D.C. Cir. 2018) ("[I]f the record shows that a properly informed defendant made the decision 'with eyes open,' we will enforce an anticipatory waiver of the right to appeal." (citation omitted)). However, appeal waivers are not valid if the defendant makes a colorable claim that he "received ineffective assistance of counsel in agreeing to the waiver." Guillen, 561 F.3d at 530.

## III. DISCUSSION

Fernandez brings two sets of claims. First, he asserts that he did not agree knowingly to the appeal waiver in his plea agreement. And second, he argues that all three of his attorneys were ineffective. The Court will examine these claims in turn.

### A. VOLUNTARINESS OF THE APPEAL WAIVER

Fernandez asserts that he did not knowingly, intelligently, and voluntarily waive his right to appeal his guilty plea and sentence because he did not understand what the court-appointed translator was saying to him during his hearings. See Def.'s Mot. at 7–8. Because he "does not understand when a Person is speaking to him In English," and because the translator supposedly was "not from [Fernandez's] Home Country and Tribe of P[e]ople," Fernandez claims that he "did not understand" what he was agreeing to and, had he understood, would not have waived his right to appeal his sentence. Id. "To determine whether the defendant knowingly, intelligently, and voluntarily waived the right to appeal, the [C]ourt . . . must analyze the entire record," Lee, 888 F.3d at 507, and ask whether Fernandez understood the import of the appeal waiver. Among those factors the Court must examine are the existence and "the clarity of the written plea agreement, the defendant's signature on the agreement, defense counsel's signature on the agreement, the defendant's statements at the plea hearing, defense counsel's statements at the plea hearing, and the [Court's] questioning and statements at the plea hearing." Id.[2]

---

[2] Fernandez did not argue on direct appeal that his appeal waiver was invalid. See Fernandez, 624 F. App'x at 4. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." United States v. Hughes, 514 F.3d 15, 17 (D.C. Cir. 2008); see also Bousley v. United States, 523 U.S. 614, 621 (1998) ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). However, Fernandez also claims that his counsel was ineffective on direct appeal for not seeking to invalidate his appeal waiver—and "an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default." Martinez v. Ryan, 566 U.S. 1, 11 (2012). Meanwhile, the question whether Fernandez knowingly agreed to the appeal waiver has a reciprocal impact on his IAC claims. The Court will therefore assume that procedural default does not apply and address the claim head-on.

6

Here, the record clearly shows that Fernandez understood that he was waiving his right to appeal and pleaded guilty with his eyes open. To begin with, Fernandez signed a plea agreement containing the waiver. In doing so, Fernandez stated that he had "read this Plea Agreement with the assistance of a federally certified English-Spanish court interpreter, and ha[d] discussed it at length with [his] attorney . . . with the assistance of a federally certified English-Spanish court interpreter," and that he "fully underst[oo]d this Plea Agreement and agree[d] to it without reservation." Plea Agreement at 11. "A written plea agreement in which the defendant waives the right to appeal is strong evidence that the defendant knowingly, intelligently, and voluntarily waived the right to appeal." Lee, 888 F.3d at 507. The appeal waiver in the plea agreement was clear, informing Fernandez that he was agreeing "to waive his right to appeal the finding of guilt as well as the sentence imposed" and "the manner in which the sentence was imposed." Plea Agreement ¶ 19. Stolarz, his counsel, also agreed that he had "discussed the appeal waiver with the defendant" and that he would request a specific finding from the Court "regarding the defendant's knowing and voluntary waiver of his right to appeal." Id. Fernandez and Stolarz signed the plea agreement on August 13, 2012. Id. at 11; see Tr. of Aug. 13, 2012 Plea Hr'g at 28:10–29:4. Both the existence and the specifics of the agreement therefore support a finding that Fernandez knowingly waived his appeal rights.

The record of the August 13, 2012 plea hearing provides further evidence that Fernandez knowingly, voluntarily, and intelligently waived his right to appeal. Upon questioning by the Court, Fernandez confirmed that he had been educated "through the fifth year of high school," Tr. of Aug. 13, 2012 Plea Hr'g at 18:3–:6; that he understood the consequences of the charge to which he would be pleading guilty, id. at 18:10–19:4; that he understood what was happening at the hearing and was not sick or taking medication that could interfere with his ability to understand

7

the proceedings, id. at 19:6–:23; that he had had sufficient time to consult with Stolarz about the case, id. at 20:2–:20; and that he had not been threatened or coerced into entering his guilty plea, id. at 42:18–:20. The Court, considering these responses and Stolarz's representation that he believed Fernandez competent to make his plea, found that Fernandez was competent, understood the plea agreement, and was pleading voluntarily. Id. at 45:3–:9. The Court also made sure that Fernandez understood that he had the right to appeal, and explained the details of the appeal waiver to which Fernandez was agreeing by pleading guilty. Id. at 39:8–40:14. Fernandez acknowledged that he understood all of the provisions of the appeal waiver, and the Court made "a specific finding that this has been discussed with [his] counsel" and that he had "knowingly and voluntarily waived [his] right to appeal . . . to the extent set out in this agreement." Id. at 40:15–:22.

The records of the plea hearing also undermine Fernandez's specific claim that he could not understand what others were saying to him. The Court asked Fernandez during the hearing whether he was able to understand the proceedings through the use of the court interpreter, and Fernandez responded: "Yes, I am understanding it." Id. at 17:25–18:2. Nowhere in his § 2255 petition or his reply does Fernandez provide any reason why he would (or could) have said he understood the proceedings if, in fact, he could not understand what the translator was telling him. Additionally, the Court told Fernandez that he should ask the Court if he did not understand anything about the proceedings or wished to consult with Stolarz, see id. at 17:5–:8, and Fernandez followed this suggestion several times during the hearing. For instance, when the Court explained the rights Fernandez would have if he were to plead not guilty, Fernandez responded: "I understand, but if I were to decide that way, I would go to trial; isn't that right, Your Honor?" Id. at 22:24–:25. Likewise, he told the Court when he wished to speak to his attorney. See id. at 42:25. And he elaborated on his responses to a number of the Court's questions, thereby showing

8

that he clearly understood the questions asked of him. See, e.g., id. at 19:1–:23, 21:3–:6, 23:3–:5, 23:21–:22, 34:8–:11. Thus, when Fernandez said that he "of course" understood that he would be waiving his right to appeal, id. at 25:12–:13; see id. at 40:17 ("I do understand."), there is every indication that he did, indeed, understand.

The entire record confirms that Fernandez knowingly, intelligently, and voluntarily agreed to the appeal waiver in his plea agreement. Hence, his claim to the contrary will be denied.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Even if an appeal waiver is otherwise voluntary, courts will not enforce it if "the defendant makes a colorable claim he received ineffective assistance of counsel in agreeing to the waiver." Lee, 888 F.3d at 507 n.1 (quoting Guillen, 561 F.3d at 530–31). Fernandez raises IAC claims against Abreu, Stolarz, and Conte for their actions at different stages of the case in this Court and on direct appeal. The Court examines each claim in turn, and finds each wanting.

#### 1. Ineffective Assistance Claim Against Abreu

Fernandez first brings an IAC claim against his original trial counsel, Abreu, whom Fernandez says "Coerced his Client to Plea[d] Guilty to a crime that he kn[e]w that his Client did not commit[], and then Told his client to Sign[] away his Right of Appeal." Def.'s Mot. at 5. The problem with this claim is that Abreu no longer represented Fernandez when Fernandez negotiated his final plea agreement and pleaded guilty. Abreu had withdrawn, and Stolarz helped Fernandez renegotiate a plea agreement that would give him a lower Guidelines range. See Tr. of Aug. 13, 2012 Plea Hr'g at 2:3–:5, 4:8–:13. The Court set aside Fernandez's earlier guilty plea, see Min. Entry of Nov. 10, 2011, and conducted a full new plea hearing. As the government pointed out, this second hearing was designed to—and did—"cure any possible Sixth Amendment taint or any other issues that have come up in the past." See Tr. of Aug. 13, 2012 Plea Hr'g at 2:9–:12.

9

Additionally, the Court asked Fernandez at that second hearing whether he had had the opportunity to discuss the proposed plea and whether to plead guilty with counsel. Id. at 20:25–21:2. Fernandez responded: "I have been willing to plead guilty from the beginning. Now that everything has been ironed out and things have been done correctly, yes." Id. at 21:3–:6. This response confirms that the renegotiation and rehearing process had eliminated any alleged negative effect from Abreu's representation. Hence, Fernandez cannot "affirmatively prove prejudice," Strickland, 466 U.S. at 693, and his IAC claim against Abreu will be denied.[3]

2. Ineffective Assistance Claim Against Stolarz

Fernandez next asserts that Stolarz was ineffective, in two ways: first, by allowing Fernandez to agree to the appeal waiver; and second, by taking Fernandez to sentencing when he "kn[e]w about all of the Inaccurate Advises . . . given to his client, By Attorney Robert Abreu, at his plea agreement hearing." Def.'s Mot. at 6. The second half of this claim is easily disposed of. Even assuming Abreu had given Fernandez inaccurate advice, Fernandez later fired Abreu, worked with Stolarz to renegotiate the plea deal, and underwent a second plea hearing. Just as this second plea process undercuts Fernandez's claim against Abreu, so too does it show that the effect of Abreu's advice—if indeed it had been inaccurate—was washed away by Fernandez's new attorney and new plea hearing. Stolarz's decision to take Fernandez to sentencing therefore caused Fernandez no prejudice. See Strickland, 466 U.S. at 691–92.

---

[3] Fernandez elaborates in his reply on his claim that Abreu coerced him into pleading guilty, asserting that "the Prosecutors knew that they Induced Attorney Abreu into committing a crime and want this Court to cover it up." Reply [ECF No. 416] at 3–4. In particular, Fernandez says that Abreu had been paid by one of Fernandez's co-defendants to represent Fernandez; that that co-defendant was a government informant; and that together Abreu, Fernandez's co-defendant, and the government conspired to convict Fernandez for a crime he never committed. See id. at 4. Needless to say, there is no evidence of such a nefarious conspiracy in the record. "To the contrary, the record casts a wide shadow of doubt on [Fernandez's] allegation." United States v. Farley, 72 F.3d 158, 165 n.6 (D.C. Cir. 1995). Fernandez told the Court at his second plea hearing that he was entering his guilty plea voluntarily, and was not coerced into doing so. See Tr. of Aug. 13, 2012 Plea Hr'g at 42:18–:20. In any event, Fernandez received new counsel before he ultimately entered the plea agreement at issue here, and he does not claim that Stolarz was part of this supposed conspiracy.

10

Stolarz also did not render ineffective assistance by advising Fernandez to agree to the plea waiver. At his plea hearing, Fernandez offered unprompted his positive view of Stolarz's performance. See Tr. of Aug. 13, 2012 Plea Hr'g at 16:6–:8 ("And in advance, I want to thank you for having named counsel. He is doing a very good job for me."). Fernandez told the Court that Stolarz "has explained everything to me," and when asked whether he was satisfied with Stolarz's services he responded, "Yes, Your Honor. It is the case." Id. at 20:17–:24; see id. at 32:8–:11. "[I]n challenging a guilty plea on the basis of ineffective assistance, the representations of the defendant at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea, may 'constitute a formidable barrier' to his later refutations." United States v. Taylor, 139 F.3d 924, 933 (D.C. Cir. 1998) (citation omitted). Fernandez provides no information or argument that would refute what he said when it mattered: at the plea hearing.[4]

Even if Fernandez had not made these statements, however, Stolarz's advice to Fernandez to agree to the appeal waiver falls squarely within "the wide range of reasonable professional assistance" allowed under the Sixth Amendment. Strickland, 466 U.S. at 689. "Allowing a defendant to waive the right to appeal his sentence . . . gives him an additional bargaining chip to use in negotiating a plea agreement with the Government." Guillen, 561 F.3d at 530. Agreeing to a plea waiver as part of an overall settlement therefore "improves the defendant's bargaining position and increases the probability he will reach a satisfactory plea agreement with the

---

[4] Fernandez does claim in his reply that Stolarz lied to him and "told the Defendant Fernandez to say yes to any question that the Judge asked him, because the Judge is going to send you home back to your Country after the case is finish[ed]." See Reply at 6. This argument, unsupported by anything in the record, "is woefully insufficient to overcome the strong presumption that [his] counsel's legal representation at sentencing was adequate and reasonable." United States v. Rush, 910 F. Supp. 2d 286, 294 (D.D.C. 2012). Indeed, Fernandez denied at the plea hearing that anyone, "including [his] attorney," had promised that he would get any particular sentence or a lighter sentence if he pleaded guilty. Tr. of Aug. 13, 2012 Plea Hr'g at 41:21–42:5. Moreover, the Court stated at the hearing that Fernandez would be bound by his guilty plea even "if the sentence that [is imposed] is more severe than [he] expected or hoped that it would be," and Fernandez said he understood this. See id. at 40:23–41:5. Thus, "[a]ny notion entertained by [Fernandez] that a particular sentence or sentencing range was guaranteed 'should have evaporated during the rule 11 colloquy.'" United States v. Zaitar, 641 F. App'x 1, 2 (D.C. Cir. 2015) (quoting Farley, 72 F.3d at 165).

Government." Id. Here, Fernandez stated multiple times during the plea hearing that he had been "willing to plead guilty from the beginning," Tr. of Aug. 13, 2012 Plea Hr'g at 21:3–:4, that he "just want[ed] to resolve [his] problem," id. at 23:3, and that he "want[ed] to plead guilty, and . . . to say that what [he] said to the prosecution has always been the truth," id. at 23:4–:5. Given Fernandez's evident desire to get the case resolved as soon as possible, Stolarz cannot be faulted for advising Fernandez to agree to a plea deal that included a standard appeal waiver. As Stolarz's actions were not "outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, Fernandez's IAC claim against Stolarz will be denied.

### 3. Ineffective Assistance Claim Against Conte

Finally, Fernandez claims that Conte provided ineffective assistance on direct appeal. Fernandez asserts that Conte knew Fernandez had not understood what people were saying to him during his proceedings in this Court and yet did not challenge his appeal waiver or even communicate with him. See Def.'s Mot. at 9; Reply at 7. There is a decent argument to be made that Conte's actions, as described by Fernandez, would fall below an objective standard of reasonableness. It was Fernandez's decision, as the client, to decide whether to take an appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Once that decision was made, it may have been incumbent on Conte to fight the waiver that barred the appeal. While effective appellate advocates are expected to "'winnow[] out weaker arguments on appeal and focus[] on' those more likely to prevail," Smith v. Murray, 477 U.S. 527, 536 (1986) (citation omitted), the D.C. Circuit would not have been able to hear Conte's arguments about the substantive reasonableness of Fernandez's sentence if he had not also challenged the appeal waiver. This Conte did not do. And, predictably, the D.C. Circuit enforced the unchallenged appeal waiver and dismissed Fernandez's appeal. See Fernandez, 624 F. App'x at 3–4. On the other hand, Conte was in a difficult situation: he realized,

12

as the Court does, that "there were no meritorious grounds to challenge" the waiver and that the appeal would almost certainly be dismissed either way. Conte Aff. [ECF No. 408-14] ¶ 5.

But if the Court were to find that Conte's representation was ineffective—a question on which the Court does not pass—Fernandez's IAC claim nonetheless would fail for lack of prejudice. To prove prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Payne v. Stansberry, 760 F.3d 10, 13 (D.C. Cir. 2014) (noting that the Strickland standard applies to ineffective assistance of appellate counsel claims). Fernandez has not shown that, had Conte challenged the waiver on direct appeal, the result of that appeal had a reasonable probability of coming out differently. As discussed above, the record makes it abundantly clear that Stolarz had explained the plea agreement to Fernandez; that Fernandez understood what others were saying to him during the plea hearing; and that he agreed to waive his appeal rights knowingly, intelligently, and voluntarily. Because there is "no reason to doubt [Fernandez's] waiver was knowing, intelligent, and voluntary," Guillen, 561 F.3d at 531, Fernandez cannot show that there is a probability of a different result on appeal "sufficient to undermine confidence in the outcome," Strickland, 466 U.S. at 694. The claim regarding Conte's representation, therefore, will be denied.

## IV. CONCLUSION

For the reasons explained above, none of Fernandez's claims are meritorious. Therefore, his § 2255 motion will be denied.

/s/
JOHN D. BATES
United States District Judge

Dated: May 21, 2018